**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| EXACT ORDER SPECIALTIES, an Oregon Sole Proprietorship,<br><br>                Plaintiff,<br><br>vs.<br><br>GLOW INDUSTRIES, INC., an Ohio corporation; JASON GLOWACKI, an individual; and DOES 1-10;<br><br>                Defendants. | No. 03:12-cv-00631-HU<br><br>**MEMORANDUM OPINION AND ORDER ON MOTION TO TRANSFER VENUE AND MOTION TO DISMISS** |

_____

John E. Grant, III
Meltzer Grant LLC
107 S.E. Washington St., Suite 410
Portland, OR 97214

      Attorney for Plaintiff

Christopher E. Hawk
Daniel J. Nichols
Gordon & Rees LP
121 S.W. Morrison St., Suite 1575
Portland, OR 97204

Charles V. Choken
David A. Welling
Choken Welling LLP
3020 W. Market St.
Akron, OH 44333

      Attorneys for Defendants

1 - MEMORANDUM OPINION AND ORDER

HUBEL, Magistrate Judge:

The plaintiff Exact Order Specialties ("Exact") brings this action for trademark infringement against the defendants Glow Industries, Inc. ("Glow"); Jason Glowacki ("Glowacki"); and Does 1-10. The matter is before the court on Glow's Motion to Transfer Venue (Dkt. #31), and Glowacki's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #36).

Exact, an Oregon corporation, is in the business of designing and manufacturing various products, "including musical instruments, guitar jack sockets, and premium smoking pipes." Dkt. #35, p. 3 (citing Dkt. #27, First Am. Cmpt., ¶ 11). Among other things, Exact designs, manufactures, markets, and sells a small, portable smoking pipe called the "Monkey Pipe." According to Exact, the pipe is "made from high quality, hand finished hardwoods," and is one of Exact's most popular products. *Id.* (citing Dkt. #27, ¶ 12). On each Monkey Pipe, Exact places its "Exact Order Specialties Eye" logo design (the "EOS Eye Logo"). Exact maintains federally-registered trademarks for the EOS Eye Logo (Reg. No. 3,060,212), and the term "Monkey Pipe" (Reg. No. 3,883,064). Exact claims its EOS Eye Logo "is widely recognized by the consuming public of the United States." Dkt. #27, ¶ 19.

According to Exact, a Glow employee named Brian Nupp contacted Exact twice in February 2010, to express Glow's interest in whole-saling Monkey Pipes. Dkt. #27, ¶¶ 25 & 26; Dkt. #35, p. 3. Jason Davis, on behalf of Exact, corresponded with Nupp twice in March 2010, via e-mail, regarding Glow's inquiry. Exact claims that on

2 - MEMORANDUM OPINION AND ORDER

March 15, 2010, Nupp renewed Glow's interest in wholesaling Monkey Pipes, if Glow could receive certain payment terms. Dkt. #27, ¶ 28. However, Glow never submitted a purchase order for the Monkey Pipes. Dkt. #27, ¶ 29; Dkt. #35, p. 3.

According to Glow, in October 2011, it "purchased 1,010 pipes at $3.00 per pipe ($3,030 worth of total product) from a company in California that is not a party to this case." Dkt. #32, p. 2. Glow then sold those pipes wholesale to various buyers, including two sales to entities in Oregon: (1) a sale of ten pipes on October 12, 2011, "at a total cost of $62.50 to Magic Mushroom Lamp Co. in Sutherlin, Oregon"; and (2) a sale of one pipe on December 6, 2011, "at a total cost of $6.00 to Flashback T's in Coos Bay, Oregon." *Id.*

Exact alleges the pipes sold by Glow to customers in Oregon were called "USA Made Monkey Pipe[s]," featuring a copy of the EOS Eye Logo, and bearing a false trademark symbol. Exact claims these pipes were "an obvious, low quality knock-off of the Monkey Pipe," that infringed Exact's marks. Dkt. #27, ¶¶ 30, 32; Dkt. #35, p. 3. Exact alleges Glow's sale of the knock-off Monkey Pipes has damaged Exact's business, reputation, and goodwill, and Glow's sale of the counterfeit pipes "is likely to cause confusion, mistake, and deception by creating the false and misleading impression that [Glow's] goods are manufactured or distributed by [Exact], or are associated or connected with [Exact], or have the sponsorship, approval, or endorsement of [Exact]." Dkt. #27, ¶ 45.

Exact filed this action on April 10, 2012, alleging federal and state claims for trademark infringement and counterfeiting against Glow, David Glowacki, Brian Nupp, and "Does 1-10." Dkt.

3 - MEMORANDUM OPINION AND ORDER

#1. On May 25, 2012, Glow filed a motion to transfer venue, Dkt. #22, and the defendants David Glowacki and Brian Nupp filed a motion to dismiss for lack of personal jurisdiction, Dkt. #24. Exact filed its First Amended Complaint on June 4, 2012, deleting David Glowacki and Brian Nupp as defendants, and adding Jason Glowacki as a defendant. Dkt. #27; *see* Dkt. #37, p. 2. As a result of Exact's filing of the Amended Complaint, the court found the motion to transfer venue and motion to dismiss to be moot. Dkt. #29. Glow filed its current motion to transfer venue on June 18, 2012, Dkt. #31, and the defendant Jason Glowacki filed his current motion to dismiss for lack of personal jurisdiction on July 3, 2012, Dkt. #36. According to Exact, Glowacki "has been served but has not yet appeared in this action." Dkt. #35, p. 4.

The current motions are fully briefed, and no party has requested oral argument. I will address Glowacki's motion to dismiss first, and then turn to consideration of Glow's motion to transfer venue.

### *MOTION TO DISMISS*

Glowacki moves to dismiss Exact's case against him on the basis that this court lacks personal jurisdiction over him. I first will address Exact's argument that Glowacki failed to comply with Local Rule 7-1, "because he did not make a good faith effort through personal or telephone conference to resolve the dispute with [Exact] despite certifying that he had done so." Dkt. #40, p. 2. Exact's counsel has filed a declaration stating he never had any personal or telephone conversation with any attorney for Jason Glowacki regarding the present motion to dismiss. Dkt. #41.

4 - MEMORANDUM OPINION AND ORDER

Counsel describes contacts he had with defense counsel regarding the previous motion to dismiss filed by David Glowacki and Brian Nupp, and a conversation with Jason Glowacki's attorney after the current motion was filed, during which defense counsel indicated he believed he had complied with the Local Rule. *Id.* Exact argues Glowacki's motion should be denied on the basis that no good-faith effort was made to comply with the Local Rule.

"The obvious purpose of Local Rule 7-1(a) is to encourage parties to resolve disputes amicably when possible, preserving judicial resources for those matters that require the court's intervention." *Thompson v. Federico*, 324 F. Supp. 2d 1152, 1172 (D. Or. 2004) (Mosman, J.); *accord Gerke v. Travelers Cas. Ins. Co.*, 815 F. Supp. 2d 1190, 1198 (D. Or. 2011) (citing *Thompson*). Here, the parties' counsel had some conversation regarding the defendants' failure to comply with the Local Rule in connection with the previous motion filed by David Glowacki and Brian Nupp. Despite that conversation, Exact's counsel contends defense counsel once again failed to comply properly with the Local Rule in connection with Jason Glowacki's motion. According to Exact's counsel, defense counsel asserted that because the parties had discussed the jurisdictional issue in connection with the prior motion to dismiss, "he believed he understood [Exact's] position on the issue and that the requirement for conference was therefore satisfied." Dkt. #41, ¶ 12. Glowacki's attorney has filed a declaration detailing the attorneys' conversations from his point of view, and indicating his belief that he did, in fact, make a good-faith effort to comply with the Local Rule. Dkt. #45.

From the attorneys' descriptions of their conversations, it appears their respective intentions and understandings were less than crystal clear.  However, I find Glowacki's counsel complied with the Local Rule for purposes of the current motion to dismiss. Even if I found otherwise, however, I would not deny the motion on that basis at this juncture.  It is clear from the attorneys' conversations that if Glowacki's motion were denied on procedural grounds, he immediately would seek leave to refile the motion. Preservation of judicial resources is served by considering the motion now, on its merits.

Turning, therefore, to the merits of Glowacki's motion, Chief Judge Aiken of this court recently set forth the standards applicable to motions of the type filed by Glowacki, in *Videz, Inc. v. Micro Enhanced Technology, Inc.*, slip op., 2012 WL 1597380 (D. Or. May 4, 2012):

> "'Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process.'" *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2080) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).  Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process. Or. R. Civ. P. 4L.  Thus, the analysis collapses into a single framework and the court proceeds under federal due process standards. *Id.*; *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002).
>
> Due process requires that a defendant, if not present in the state, "'have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Avocent*, 522 F.3d at 1329 (quoting

6 - MEMORANDUM OPINION AND ORDER

> *Int'l Shoe Co. [v.] Washington*, 326 U.S. 310, 316[, 66 S. Ct. 154, 158, 90 L. Ed. 95] (1945)). Minimum contacts may be demonstrated through facts supporting general or specific jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8[, 104 S. Ct. 1868, 1872 & n.8, 80 L. Ed. 2d 404] (1984). A plaintiff need only make a "prima facie showing" that a defendant is subject to personal jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

*Videz*, 2012 WL 1597380 at *1.

Here, Exact expressly acknowledges that it "does not possess facts sufficient to know whether Glowacki is subject to general jurisdiction in Oregon." Dkt. #40, p. 5 n.1. Nor could Exact show, on the facts as pled, that Glowacki has engaged in the type of "continuous and systematic general business contacts" approximating a "physical presence" in Oregon, sufficient to assert general jurisdiction over him. *See id.* Instead, Exact claims the court has specific jurisdiction over Glowacki. Dkt. #40, pp. 6-10.

The Ninth Circuit has established a three-part test to determine whether the court's exercise of specific jurisdiction over a nonresident defendant is appropriate:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

7 - MEMORANDUM OPINION AND ORDER

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004), in turn citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden on the first two prongs." *Id.* If the first two prongs are established, then the burden shifts to the defendant to "come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citations omitted). If the first two prongs are not established, then the case must be dismissed. *Id.* Notably, if the court "decides the motion without an evidentiary hearing, which is the case here, then 'the plaintiff need only make a prima facie showing of the jurisdictional facts.'" *Id.*, 539 F.3d at 1015 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127-28 (9th Cir. 1995)). The court takes as true the uncontroverted allegations in the plaintiff's Complaint, and resolves conflicts between the parties' affidavits in the plaintiff's favor. *Id.* (citations omitted).

Exact makes only one allegation against Glowacki, individually; i.e., it claims, "[u]pon information and belief," that Glowacki is Glow's President and CEO. Dkt. #27, ¶ 4. Exact alleges its only contacts with Glow were through a Glow vice president named Brian Nupp. *Id.*, ¶¶ 25-28. Besides describing e-mail contacts with Nupp, Exact's other allegations in its Amended Complaint refer to the "Defendants," without distinguishing any actions allegedly taken by any individual on Glow's behalf. *See* Dkt. #27.

Nevertheless, Exact argues Glowacki is subject to personal jurisdiction because he "is not merely associated with Glow: he is the senior officer of Glow, the President and CEO, and <u>presumably</u>

8 - MEMORANDUM OPINION AND ORDER

director of its strategies and activities." Dkt. #40, p. 8 (emphasis added). Exact argues, therefore, that Glowacki must have been a "primary participant" in the alleged offending activities, rendering the fiduciary shield doctrine inapplicable to him. *Id.*, pp. 6-9.

The "fiduciary shield" doctrine, generally, protects a corporate official from personal jurisdiction in a forum where the individual's only contacts arose in the performance of official duties on the corporation's behalf. *See Sidco Indus. v. Wilmar Tahoe Corp.*, 768 F. Supp. 1343, 1349 (D. Or. 1991) (Frye, J.) ("A corporate officer who has contact with a forum only in the performance of his official duties is not subject to the personal jurisdiction of the courts in that forum."). However, the fiduciary shield may be disregarded "in cases in which the corporation is the agent or alter ego of the individual defendant . . . or where there is an identity of interests between the corporation and the individuals." *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520-21 (9th Cir. 1989) (citations omitted). The mere status of an individual as an employee of a corporation does not insulate the individual from personal jurisdiction. "'Each defendant's contacts with the forum State must be assessed individually.'" *Id.* at 521 (quoting *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804 (1984)).

Here, Exact has made <u>no</u> allegations regarding Glowacki's individual actions, either inside or outside the State of Oregon. Exact's sole allegation is that Glowacki is President and CEO of Glow, and he therefore "presumably" participated in Glow's activities within the state. This simply is not enough. Even in cases

9 - MEMORANDUM OPINION AND ORDER

where the individual defendant had *some* activities in Oregon (as opposed to the complete lack of alleged activity in Oregon by Glowacki), courts have held the minimal activities were insufficient to confer personal jurisdiction. *See, e.g.*, *Sidco, supra*; *Pacific Cornetta, Inc. v. Jung*, 218 F.R.D. 250, 255 (D. Or. 2003) (Haggerty, J.); *EQ Solutions, LLC v. Funk*, 2004 WL 816850, at *1 (D. Or. Apr. 14, 2004) (Coffin, M.J.) (all dismissing individual defendants whose minimal activities in Oregon were only conducted in their capacities as corporate representatives).

Accordingly, Glowacki's motion to dismiss this action for lack of personal jurisdiction is **granted**. However, the dismissal is **without prejudice**, recognizing that as discovery progresses in the case, additional evidence may come to light regarding Glowacki's individual actions within the state.

### *MOTION TO TRANSFER VENUE*

Glow claims it "does not regularly engage in business in Oregon"; "has few customers, transacted little business, and has no regular contacts with the state of Oregon"; "does not reside, or regularly conduct business, in Oregon"; and "does not have a regular or established place of business in Oregon." Dkt. #32, p. 3 (citing Dkt. #33, Affidavit of Jason Glowacki). Glow argues that even if venue is proper in this court, the court should exercise its discretion to transfer the case to the District of Ohio, where, according to Glow, the case could have been brought, and where all of Glow's witnesses reside. Glow maintains that its sale of eleven pipes to two Oregon customers for a total of $68.50, "does not justify dragging Glow Ohio, its President, its employees,

10 - MEMORANDUM OPINION AND ORDER

and likely other witnesses literally across the county[ sic] to an Oregon court." Dkt. #32, p. 8. Glow argues the dollar amount of its sales to Oregon customers is "so low that it really offends the traditional notions of justice" to require Glow to defend the action in Oregon. *Id.*

Exact argues Glow's sale of the allegedly counterfeit pipes to Oregon customers has created "actual and potential customer confusion as to the source of the goods . . . in Oregon," and Glow is "engaged in substantial and not isolated activities in Oregon." Dkt. #35, p. 2. Exact notes Glow has not challenged personal jurisdiction in this court, and Glow is considered a "resident" of Oregon under 28 U.S.C. § 1391(b)(1)[1] and (c)(2)[2]. *Id.*, p. 6. Although Glow does not contest its status as an Oregon "resident" for purposes of section 1391(b)(1), Glow notes Glowacki is not a resident of Oregon, under any interpretation, defeating Exact's argument that venue is proper under that subjection. Glow further argues venue is not proper in Oregon under section 1391(b)(2)[3], based on Glow's limited activities within the State.

---

[1] "A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"  28 U.S.C. § 1391(b)(1).

[2] "For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. . . ."  28 U.S.C. § 1391(c)(2).

[3] "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"  28 U.S.C. § 1391(b)(2).

11 - MEMORANDUM OPINION AND ORDER

Despite the court's finding that it lacks personal jurisdiction over Glowacki, the court still must determine the venue issue on the basis of the Complaint as-filed. "Venue is to be determined as of the time the complaint was filed and is not affected by a subsequent change of parties." *Sidco Industries, Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1346 (D. Or. 1991) (Frye, J.) (citing *Exxon Corp. v. Fed. Trade Comm'n*, 588 F.2d 895, 899 (3d Cir. 1978)). Because both defendants are not residents of Oregon, venue cannot be based on 28 U.S.C. § 1391(b)(1).[4] Thus, the court looks to subsection (b)(2) to determine, at the outset, whether venue is proper in this court. *Id.*

Under subsection (b)(2), venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). With regard to the "events . . . giving rise to the claim," in a trademark action, such as this one, "'the wrong takes place . . . where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.'" *Sidco*, 768 F. Supp. at 1346 (quoting *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)); *see Woodke v. Dahm*, 873 F. Supp. 179, 197-99 (N.D. Iowa 1995) (cataloguing cases; noting the "rule that venue lies where the 'passing off' occurred" is the traditional test; and finding the rule still viable after amendments to section 1391(b)(2)). In the present case, Exact has alleged that offending sales were made

---

[4]*See* note 1, *supra*.

12 - MEMORANDUM OPINION AND ORDER

in Oregon. By "purposefully avail[ing] itself of the privilege of conducting activities" within Oregon, Glow had "clear notice" that it was subject to suit here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980). I find, therefore, that venue is proper in this court.

However, even though venue is proper in this court, the court has discretion to transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). Glow's motion to transfer venue, therefore, really hinges on the convenience of the forum. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 180, 99 S. Ct. 2710, 2715, 61 L. Ed. 2d 464 (1979) ("[V]enue . . . is primarily a matter of choosing a convenient forum.") (citing C. Wright, A. Miller, & E. Cooper, *Federal Prac. & Proc.* § 3801, pp. 506 (1976)). Although 28 U.S.C. § 1404(a) somewhat "displaces the common law doctrine of *forum non conveniens*," similar considerations are useful in deciding a motion to transfer under that section. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964)). The court is charged with balancing "the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal Co. v. Commonwealth Edison*

13 - MEMORANDUM OPINION AND ORDER

*Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citations omitted); *accord Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Notably, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker*, 805 F.2d at 843.

In conducting this balancing of interests, the courts have considered a number of factors as relevant to the determination of a proper forum. These factors are similar to those the court weighs to determine jurisdictional issues. Eight factors that have been identified by the Ninth Circuit include: "(1) plaintiff's choice of forum, (2) convenience to the parties, (3) convenience to the witnesses, (4) ease of access to evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Benchmade Knife Co. v. Benson*, 2010 WL 988465, at *6 (D. Or. Mar. 15, 2010) (Haggerty, J.) (citing *Decker, supra*). If the balance of these factors is relatively even, "the law favors deference toward the plaintiff's choice of forum." *Adidas America, Inc. v. Herbalife Intern., Inc.*, 2010 WL 596584, at *7 (D. Or. Feb. 12, 2010) (Mosman, J.) (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002)). The standard to defeat the plaintiff's chosen forum is high: the defendant must make "a clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002) (internal quotation marks, brackets, and citations omitted). Indeed, the

14 - MEMORANDUM OPINION AND ORDER

*Dole Food* court observed that the doctrine of inconvenient forum "is 'an exceptional tool to be employed sparingly, [not a] . . . doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Id.* (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)).

None of the factors listed by the *Benchmade Knife* court weighs strongly in Glow's favor. This is the forum selected by the plaintiff. The convenience to the parties is equal; i.e., Oregon is inconvenient for Glow, and Ohio would be inconvenient for Exact. There are witnesses in both states. Concerns regarding inconvenience to Glow's witnesses, or to difficulties in compelling their appearance for trial in Oregon, can be resolved easily by the taking of trial depositions in Ohio, or elsewhere. Most of Glow's witnesses seem to be affiliated with Glow, and thus are likely to be cooperative. Evidence also exists in both states, and traditional discovery methods will make the evidence equally accessible to both parties. To the extent Exact's claims arise under federal law, both courts have equal familiarity with the law. However, Exact also brings claims under Oregon law, with which this court has greater familiarity than the District of Ohio. The last three factors have little or no relevance here. In short, applying these factors to the present case leads to the conclusion that Glow has not shown a degree of "oppression and vexation" that is sufficiently out of proportion to Exact's choice or forum.

Accordingly, Glow's motion to transfer venue is **denied.**

/ / /
/ / /
/ / /

15 - MEMORANDUM OPINION AND ORDER

***CONCLUSION***

For the reasons discussed above, the defendant Jason Glowacki's motion to dismiss for lack of personal jurisdiction (Dkt. #36) is **granted**, and this case is **dismissed without prejudice** as to Jason Glowacki.

The defendant Glow Industries, Inc.'s motion to transfer venue (Dkt. #31) is **denied**.

IT IS SO ORDERED.

Dated this 20th day of August, 2012.

/s/ Dennis J. Hubel

Dennis James Hubel
Unites States Magistrate Judge

16 - MEMORANDUM OPINION AND ORDER